IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–00606–RM–KMT

JOHN RICHARDSON,

      Plaintiff,

v.

JO ANN STOCK, P.A., in her Individual Capacity,
JOHN OR JANE DOE KITE COLLECTORS, in Their Individual Capacity,
JOHN OR JANE DOE ELECTRONIC KITE LOG DOCUMENTORS, Individually,
JOHN OR JANE DOE APPOINTMENT SCHEDULERS, in Their Individual Capacity,
BEV DOWIS, R.N., H.S.A., in her Individual Capacity as Health Services Administrator,
LT. GILES, in his Individual Capacity,
SGT. OLIVERIUS, in his Individual Capacity,
SGT HILL, in his Individual Capacity, and
SGT. LIMBREIS, in his Individual Capacity,

      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendant Stock's Motion to Dismiss, or

Alternatively, for Summary Judgment" (Doc. No. 13, filed Apr. 22, 2013 [Stock Mot.]),

"Defendant Dowis' Motion to Dismiss" (Doc. No. 19, filed May 22, 2013 [Dowis Mot. Dismiss]),

and "Defendants Giles, Oliverius, Hill, and Limbreis' Motion to Dismiss" (Doc. No. 32, filed Aug.

23, 2013 [Officer Defs. Mot. Dismiss.]).  For the following reasons, the court recommends that

Defendant Stock's Motion to Dismiss, or Alternatively for Summary Judgment be GRANTED,

that Defendant Dowis' Motion to Dismiss be GRANTED in part and DENIED in part, and that the

Officer Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and Jury Demand, filed March 8,

2013 (Doc. No. 1 [Compl.], and the parties' submissions with respect to this Recommendation.

Plaintiff, a Colorado Department of Corrections (CDOC) inmate currently incarcerated at Sterling

Correctional Facility (SCF), alleges that Defendants violated his rights under the Eighth

Amendment to the United States Constitution, as well as state law, by failing to treat the onset of

gangrene that resulted in the amputation of his left leg below the knee.

Plaintiff has insulin-dependent diabetes and peripheral neuropathy that affects his hands

and lower legs.  (Compl. ¶ 12.)  Peripheral neuropathy is nerve damage associated with decreased

blood flow, which can also result in wounds not healing and gangrene setting in.  (*Id.* ¶ 13.)

Gangrene is a common and well-known, life-threatening risk to diabetics with peripheral

neuropathy and is associated with a high risk of amputation.  (*Id.*)  Plaintiff maintains that, due to

this risk of amputation, diabetics with peripheral neuropathy require regular foot care.  (*Id.*)

On February 7, 2011, Defendant Jo Ann Stock, a physician's assistant at SCF, took

Plaintiff off his sliding-scale insulin, despite noting that his blood sugar levels were out of control.

(*Id.* ¶ 14.)  Each time Plaintiff was sent to providers outside of SCF, he was put back on sliding-

scale insulin to control his blood sugar levels and prevent damage to his organs and limbs.  (*Id.*)

Nevertheless, each time Plaintiff returned to SCF, Defendant Stock took him back off the sliding-scale

insulin, despite the risk of uncontrolled blood sugar levels to his health.  (*Id.*)

On February 7, 2011, Defendant Stock noted she would follow up in 3 weeks; however, she never did so.  (*Id.* ¶ 15.)  No foot care was provided or ordered for Plaintiff despite the risk of amputation from the lack of foot care for a diabetic with severe peripheral neuropathy.  (*Id.*)  Indeed, Plaintiff has never been provided any foot care at SCF.  (*Id.* at ¶ 17.)

Indigent prisoners must rely on the diet provided by the prison system.  (*Id.* ¶16.)  By taking Plaintiff off his sliding-scale insulin, Defendant Stock allegedly "ensured [Plaintiff's] sugar levels would be too high."  (*Id.*)

Despite lacking feeling in his hands due to neuropathy, which is noted in his prison records, Plaintiff had to cut his own toenails, which are thick with fungus and difficult to cut, as is typical in diabetics. (*Id.* ¶ 18.)  A small cut on Plaintiff's left large toe became infected and then became gangrenous during an approximately two-week period.  (*Id.* ¶ 19.)

Plaintiff asked SCF guards, including Defendants Oliverius, Hill, Limbries and Giles (hereinafter the "Officer Defendants"), to send him to medical, but they instead told him he had to put in a kite.  (*Id.* ¶ 20.)  Plaintiff submitted numerous kites for medical care which were ignored.  (*Id.* ¶ 21.)  His first kite, submitted on March 16, 2011, states, "You guys know that I am diabetic and you told me to tell medical if I am having foot problems.  My foot and big toe is [sic] swollen, smelly, bruised and it hurts really bad to walk on it.  Please schedule me ASAP. Thank you."  (*Id.* ¶ 22.)  No appointment was scheduled pursuant to this kite.  (*Id.* ¶ 23.)

On March 21, 2011, Plaintiff submitted a second kite that stated, "I put in a kite last week to have my foot looked at because it smells, its swollen, its bruised, and now its leaking fluid.  Inmates in the pod give me dirty looks and tell me to take a shower, and even the staff in med line give me dirty looks.  Please schedule me."  (*Id.* ¶ 24.)  Again, no appointment was scheduled.  (*Id.* ¶ 25.)

On March 24, 2011, Plaintiff submitted a "Request for Interview" with Defendant Dowis, Health Services Administrator at SCF.  (*Id.* ¶ 26.)  He stated

> I have put in two kites to SCF medical because my foot smells really bad.  My big toe is swollen.  Inmates and staff are telling me to take a shower but I do take showers and the smell gets worse.  Inmate Camp says that it is not just athletes foot because it is more like rotting flesh.  Can you please help me get seen.

(*Id.*)  No appointment was scheduled pursuant to this kite.  (*Id.* ¶ 27.)

Every day, Plaintiff went to med line and asked for help, and was refused by the nurses.  (*Id.* ¶ 28.)  Eventually, gas gangrene from Plaintiff's toe travelled up his leg into his thigh and groin, causing him pain.  (*Id.* ¶ 29.)  The stench from his gangrenous foot caused prisoners and guards to gag and complain.  (*Id.* ¶ 30.)  Still, he was not provided access to medical care.  (*Id.*)

On March 26, 2011, Plaintiff was called to the Lieutenant's Office because of the stench.  (*Id.* ¶ 31.)  The cut on his toe had started splitting and opening up.  (*Id.*)  Defendant Lieutenant Giles refused to send Plaintiff to medical and instead told him to go shower.  (*Id.*)

On the way to the shower, Plaintiff's toe "exploded" and a lot of gas came out mixed with some blood and fluid.  (*Id.* ¶ 32.)  Plaintiff's toe was split in numerous places.  (*Id.*)  Other prisoners came running to help Plaintiff up.  (*Id.* ¶ 33.)  They carried him under his arms back to his cell.  (*Id.*)

On March 26, 2011, at approximately 9:30 p.m., Plaintiff was sent to Sterling Regional Medical Center (SRMC) where physicians performed a below the knee amputation (BKA) of his left leg on March 27, 2011. (*Id.*)  He was 53 years old.  (*Id.*)

When Plaintiff returned to SCF, he was refused a medical shoe for his remaining foot, and continues to be refused foot care for his remaining foot, which has sores and cracks.  (*Id.*)  He is still being forced to cut his own toenails with hands that do not work properly due to peripheral neuropathy.  (*Id.*)  According to Plaintiff, SCF medical has not made any changes to prevent future amputations.

(*Id.* ¶ 39.)  Plaintiff believes that it is "only a matter of time before his other leg will be amputated."

(*Id.* ¶38.)

## PROCEDURAL HISTORY

Plaintiff's Complaint asserts two claims for relief based on the aforementioned facts.

Plaintiff's first claim alleges that Defendants violated his Eighth Amendment right to be free from

cruel and unusual punishment because they were deliberately indifferent to his serious medical needs.

Plaintiff's second claim alleges that Defendants' conduct was willful and wanton under Colorado law.

Defendant Stock's Motion was filed on April 22, 2013.  (*See* Stock Mot.)  Plaintiff's Response

to that Motion was filed on May 11, 2013 (Doc. No. 15, filed May 11, 2013[Resp. Stock Mot.]) and

Defendant Stock's Reply was filed on May 24, 2013 (Doc. No. 20 [Stock Reply]).

Defendant Dowis' Motion to Dismiss was filed on May 22, 2013.  (*See* Dowis Mot.)  Plaintiff's

Response to that Motion was filed on June 12, 2013 (Doc. No. 23 [Resp. Dowis Mot.]) and Defendant

Dowis' Reply was filed on June 26, 2013 (Doc. No. 28 [Dowis Reply]).

Finally, the Officer Defendants' Motion to Dismiss was filed on August 23, 2013.  (Officer

Defs. Mot.)  Plaintiff's Response was filed on September 6, 2013 (Doc. No. 33 [Resp. Officer Defs.

Mot.) and Defendants Giles, Oliverius, Hill, and Limbreis' Reply was filed on September 20, 2013

(Doc. No. 34 [Officer Defs. Reply]).  Accordingly, these motions are ripe for the court's review and

recommendation

## LEGAL STANDARDS

### A.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a

claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

6

supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover,

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation

omitted).

**B.    *Summary Judgment Standard***

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The moving party bears the initial burden of showing an absence of evidence to support the

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving

party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue

for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513,

1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely

on the allegations in the pleadings, but must instead designate "specific facts showing that there is

a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact

is "material" if "under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might

lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life*

*Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## C.      *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss.  *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988).  Once the defense is asserted, the burden shifts to the plaintiff to establish (1) that the

defendant's actions violated a federal constitutional or statutory right and (2) that the federal right was clearly established at the time of the challenged conduct. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646. While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief. *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010). The plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id*. This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id*. "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id*. at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id*.

**ANALYSIS**

**A.      Eighth Amendment Claim**

    **1.      Statute of Limitations**

Defendant Stock argues that the two-year statute of limitations applicable to § 1983 claims bars Plaintiff's Eighth Amendment claim against her because her alleged conduct took place in February 2011—more than two years before Plaintiff filed his Complaint.[1]  The court disagrees.

Actions asserted under § 1983 are subject to the general personal injury limitation period of the state in which the action arose.  *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994).  The appropriate statute of limitation for § 1983 actions arising in Colorado is two years.  *Id.* at 1266; Colo. Rev. Stat. § 13–80–102.  Federal law rather than state law determines when a cause of action accrues.  *See Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir.1994).  "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  *Id.* at 969. "A civil rights action accrues when facts that would support a cause of action are or should be apparent."  *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995).

The court finds that Plaintiff's Eighth Amendment claim against Defendant Stock is timely.  Although Defendant Stock's actions—specifically, her decision to take Plaintiff off his sliding-scale insulin, failure to provide Plaintiff with preventative foot care, and failure to follow-up with Plaintiff three weeks after his February 7, 2011 appointment—all took place in

---

[1] Defendant Stock also argues that she is entitled to Eleventh Amendment immunity with respect to Plaintiff's official capacity claims.  However, Plaintiff has named Defendants in their individual capacities only. Therefore, the court need not address this argument.

February 2011, Plaintiff plainly alleges that these actions caused, in whole or in part, the amputation of his left leg below the knee.  That amputation did not take place until March 26, 2011.  As such, Plaintiff did not know of the existence of his injury until, at the earliest, March 26, 2011.  *Devbrow v. Kalu,* 705 F.3d 765, 768 (7th Cir. 2013) (a § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause).  Therefore, because Plaintiff's Complaint was filed within two years of March 26, 2011, his § Eighth Amendment claim is timely as to Defendant Stock.

> ### 2.    Exhaustion

Defendant Stock also argues that Plaintiff failed to exhaust his administrative remedies with respect to his allegations against her.  The court agrees.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Failure to exhaust administrative remedies bars a claim from federal court. *Jones v. Bock,* 549 U.S. 199, 211 (2007); *see also Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (PLRA's exhaustion requirements are mandatory).

The CDOC provides inmates with administrative remedies in the form of a grievance process set forth in CDOC Administrative Regulation (AR) 850-04.  (*See* Aff. of A. DeCesaro, ¶ 4,

Attach. 1 [AR 850-04])[2]  Under AR 850-04 inmates must grieve any alleged injuries or unlawful conduct by pursuing a three-step process:  (1) attempt to resolve the issue or complaint by filing a Step One grievance within 30 days of the discovery of the issue or complaint; (2) if the inmate is not satisfied with the response/resolution of his Step One grievance, he must filed a Step Two grievance within five days of receipt of the written response to his Step One grievance; and (3) if the inmate is still not satisfied with the response/resolution of his grievance, he must file a Step Three grievance within five days of receipt of the written response to his Step Two grievance.  (*Id.* ¶¶ 5–8.)

Here, Defendant Stock does not dispute that Plaintiff filed the required grievances. Instead, she argues that Plaintiff's grievances were not sufficient to exhaust his administrative remedies with respect to the allegations against her because the grievances did not specifically name her, nor did they discuss her failure to provide Plaintiff with sliding-scale insulin and preventative foot care or her failure to follow-up with Plaintiff three weeks after his February 7, 2011 appointment.

"[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion."  *Jones,* 549 U.S. at 218; *see also Kikumura v. Osagie,* 461 F.3d 1269, 1281-1286 (10th Cir. 2006) *overruled in part on other grounds by Robbins v. Oklahoma,* 519 F.3d 1242 (10th Cir. 2008) (since § 1997e(a) does not specify the procedural requirements necessary for exhaustion, "the rules come from the prison grievance systems themselves—state law for state prisons, federal administrative law for federal prisons.") (internal quotation marks and citation

---

[2] Officer Decesaro's Affidavit is attached to Defendant Stock's Motion as Exhibit A-1.

omitted).  AR 850-04 provides, in relevant part:

> Each grievance shall address only one problem or complaint and include a
> description of the relief requested.  Problems that arise from the same incident or
> set of facts shall be grieved in one grievance, even though it may involve multiple
> DOC employees, contract workers, or volunteers . . . .  The grievance shall clearly
> state the basis for the grievance and the relief requested . . . .

AR 850-04 at (VI)(D)(6), (9)(b).  While this guidance undoubtedly helps inmates prepare their

grievances, it does not specify exactly what content or information is necessary to exhaust

administrative remedies.

Where the grievance procedures fail to notify inmates of the required contents of a

grievance, "a grievance will satisf[y] § 1997e(a)'s exhaustion requirements so long as it provides

prison officials with enough information to investigate and address the inmate's complaint

internally."  *Kikumura,* 461 F.3d at 1284.  *See also Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.

2006) (cited with approval in *Kikumura,* 461 F.3d at 1283 (a grievance will satisfy the exhaustion

requirement so long as it is not "so vague as to preclude prison officials from taking appropriate

measures to resolve the complaint internally.")

Under this standard, the court finds that Plaintiff has failed to exhaust his administrative

remedies with respect to his allegations against Defendant Stock.  In pertinent part, Plaintiff's

grievance stated as follows:

> Denial of medical care (treatment) that I submitted (2) two medical requests to
> Beverly Dowis but no appointments were even set which ultimately led to the
> amputation of my left leg below the knee after submitting medical kites for my feet
> to be checked my leg became so infected, I became very ill and my foot stunk
> (smelled) bad enough to make the Pod smell and inmates to complain.

(Resp. Stock Mot., Ex. 1.)

Although it is not necessary for the grievance to have specifically named Defendant Stock, *see Jones,* 549 U.S. at 922, Plaintiff's grievance nevertheless "fail[s] to mention the possibility that that his injuries were caused by" Defendant Stock's failure to provide him with sliding scale insulin, provide him with preventative foot care, and follow-up with him, *Kikumura,* 461 F.3d at 1302.  Instead, it focuses entirely on his medical requests to Defendant Dowis and the medical kites he submitted *after* his leg became infected. Further, his vague reference to "denial of medical care (treatment)" was "insufficient to notify prison officials that his injuries might have been caused by" Defendant Stock's actions, rather than those incidents specifically listed in the grievance.  *Id.* at 1286.

Because prison officials were unlikely to recognize the need to investigate Defendant Stock's care of Plaintiff in February 2011 as a potential cause of his injuries, Plaintiff's grievance did not provide prison officials with a fair opportunity to resolve Plaintiff's claims against Defendant Stock.  *Id.*  Therefore, the court finds that Plaintiff's allegations against Defendant Stock are unexhausted.  Accordingly, Plaintiff's Eighth Amendment claim is properly dismissed without prejudice to the extent it is asserted against Defendant Stock.  *Id.* at 1290 (stating that a dismissal for failure to exhaust should be without prejudice unless the claim has been properly rejected by the prison grievance system on procedural grounds).

### 3. *Failure to State a Claim for Relief*

Defendant Dowis and the Officer Defendants move to dismiss Plaintiff's Eighth Amendment claim for failure to state a claim for relief.  The Eighth Amendment proscribes

14

deliberate indifference by prison officials to an inmate's serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A "deliberate indifference" claim involves both an objective and a subjective component.  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  To satisfy the objective prong, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation and quotation marks omitted).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).

To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  The officials must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety."  *Id.* at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*  Thus, deliberate indifference entails "more than mere negligence," although it is not necessary that the acts or omissions be taken "for the very purpose of causing harm or with knowledge that harm will result.  *Id.* at 835.

Defendant Dowis and the Officer Defendants have both assumed that Plaintiff's Complaint sufficiently alleges the objective component of an Eighth Amendment deliberate indifference claim.  As such, the court addresses below whether Plaintiff has sufficiently alleged that each of these defendants acted with deliberate indifference to his serious medical needs.

### a.     Defendant Dowis

Plaintiff alleges that Defendant Dowis violated his rights under the Eighth Amendment (1) based on her supervisory capacity over the SCF medical clinic, which failed to respond to Plaintiff's kites requesting medical attention; and (2) by ignoring a medical kite from Plaintiff that was addressed specifically to her attention. The court addresses, in turn, whether these allegations are sufficient to state a claim for relief.

### i.     Supervisory Liability

To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. Government officials cannot be held liable merely by the fact of their supervisory position. *Grimsley v. McKay,* 93 F.3d 676, 679 (10th Cir. 1996). However, a plaintiff may hold a defendant liable under a theory of supervisory liability by showing: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Pahls v. Thomas,* 718 F.3d 1210, 1225 (10th Cir. 2010) (citing *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010)). Because Plaintiff alleges Defendant Dowis violated his Eighth Amendment rights, as discussed above, the mental state he must show is "one of deliberate indifference." *Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir. 2008). Plaintiff must show Defendant Dowis was actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw that inference." *Id.* (internal quotation marks omitted).

16

Plaintiff alleges that Defendant Dowis "maintained a clinic under her direction and control in which . . . diabetics with peripheral neuropathy were and continue to be routinely denied access to preventative foot care despite the obvious substantial risk of serious injury" and "kites complaining of limb- and life-threatening illnesses are destroyed or ignored and/or appointments for limb- and life-threatening conditions are not timely made."  (Compl. ¶ 43(f).)

Even assuming that these purported deficiencies in the operation of the SCF clinic somehow constitute a "policy" that Defendant Dowis created, implemented, or was responsible for, Plaintiff's Complaint is nevertheless devoid of any factual allegations raising a plausible inference Defendant Dowis knew of, and consciously disregarded, a substantial risk of harm to Plaintiff or other inmates.  For example, Plaintiff's Complaint does not include factual allegations suggesting that other specific inmates with peripheral neuropathy were denied preventative foot treatment in the past and suffered serious injury as a result.  Plaintiff's Complaint also does not specifically allege that other inmates' kites complaining of limb- or life-threatening injuries were ignored or destroyed.  Instead, the factual allegation included in Plaintiff's Complaint relate solely to the treatment, actions, and inactions that led to Plaintiff's own injury.

As a consequence, Plaintiff's Complaint is devoid of any allegations suggesting that Defendant Dowis was aware that there were deficiencies in the SCF medical clinic's "policies" and also knew that these purported deficiencies threatened serious injury to Plaintiff or other inmates.  Accordingly, the court finds that Plaintiff fails to state a § 1983 claim for supervisory liability claim against Defendant Dowis.

### ii.    *Failure to Respond to "Request for Interview"*

Plaintiff also alleges that Defendant Dowis was deliberately indifferent to his serious medical needs because she ignored his March 24, 2011 "Request for Interview," which alleged stated

> I have put in two kites to SCF medical because my foot smells really bad.  My big toe is swollen.  Inmates and staff are telling me to take a shower but I do and the smell gets worse.  Inmate Camp says that it is not just athletes [sic] foot because it is more like rotting flesh.  Can you please help me get seen.

(Compl. ¶ 26.)  Defendant Dowis argues that this allegation is insufficient to establish that she acted with deliberate indifference.  The court disagrees and finds that these allegations are sufficient to state a claim for violations of the Eighth Amendment.

Plaintiff's allegation that Defendant Dowis ignored his Request for Interview sounds in the "gatekeeper" theory of deliberate indifference.  The Tenth Circuit has held that "deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."  *Sealock,* 218 F.3d at 1211.  If a medical professional knows that her role in a particular medical scenario "is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if [s]he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that [s]he may be liable for deliberate indifference from denying access to medical care."  *Id.*

Defendant Dowis first argues that there are no allegations that she actually received Plaintiff's Request for Interview.  However, in resolving a Rule 12(b)(6) motion to dismiss, the

court must accept all well-pled allegations as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.* 154 F.3d 1124, 1226-27 (10th Cir. 1998). Here, accepting Plaintiff's allegation that he filed a Request for Interview "with" Defendant Dowis as true, it is reasonable to infer that Defendant Dowis received the request and reviewed its substance.[3]

Defendant Dowis also argues that this case is distinguishable from *Oxendine v. Kaplan,* 241 F.3d 1272 (10th Cir. 2001), where the Tenth Circuit found that a prison doctor's failure to diagnose the onset of gangrene violated the Eighth Amendment, because, in *Oxendine*, the "doctor personally observed that the offender's finger was black and disintegrating." (Mot. at 4.) The court does not read *Oxendine* to turn on the fact that the doctor personally observed the symptoms confronted by the Plaintiff.

Furthermore, in *Oxendine,* among other things, the court found the plaintiff had sufficiently alleged that the doctor acted with deliberate indifference because the plaintiff repeatedly informed the doctor that his finger "had turned jet black, that the amputated portion was gradually falling off from the remaining section of the finger, and that he was in considerable pain due to the decaying skin tissue." 241 F.3d at 1272 (internal quotation marks omitted). In a similar

---

[3] Of course, it is possible that Defendant Dowis never received Plaintiff's Request for Interview. However, while Defendant Dowis may not have acted with deliberate indifference in that scenario, it is clear that the unnamed Doe Defendant(s) who collected or logged Plaintiff's kites, or failed to schedule Plaintiff for an appointment acted with deliberate indifference to his medical needs. Ultimately, the court finds that this question is appropriate for discovery, and should not be resolved at this preliminary juncture. *Cf. Hicks v. Anderson,* No. 11-cv-00422-WJM-KMT, 2012 WL 1415338, at *11 n.6 (D. Colo. Jan. 23, 2012) *recommendation adopted at Hicks v. Keller,* 2012 WL 1414935 (D. Colo. Apr. 24, 2012) (discovery was appropriate to determine whether it was the named defendant or, alternatively, her superiors who reached the decision not to replace the plaintiff's hearing aid).

vein, here, Plaintiff informed Defendant Dowis that his foot smelled really bad, that his toe was swollen, and that another inmate opined that it appeared as though is flesh was rotting. (Compl. ¶ 26.) Further, Plaintiff informed Defendant Dowis that he had twice sough medical treatment and had been ignored. Although the facts in this case may not be as stark as those presented in *Oxendine,* the fact that Defendant Dowis allegedly received this information and did not take any action to address it is sufficient to raise an inference that she knew of and disregarded a substantial risk to Plaintiff's health. *See also Heidtke v. Corrs. Corp. of Am.,* 489 F. App'x 275, 283 (10th Cir. 2012) (noting that the facts in *Oxendine* "*easily* satisfied the subjective component" of an Eighth Amendment deliberate indifference claim) (emphasis added).

Finally, Defendant Dowis appears to argue that the fact that Plaintiff received medical treatment within 48 hours after Plaintiff submitted his Request for Interview militates against finding that she failed to discharge her gatekeeper role. This callous argument is easily rejected. First, Plaintiff did not receive medical care pursuant to his Request for Interview or the kites he submitted; he received emergency medical care only after his toe ruptured on the way to the shower. (Compl. ¶ 32.)

In any event, even gratuitously assuming that Defendant Dowis merely delayed medical care, rather than outright denying it, a delay in medical care can nevertheless constitute an Eighth Amendment violation "where the plaintiff can show that the delay resulted in substantial harm." *Sealock,* 218 F.3d at 1210. Plaintiff's Complaint clearly alleges substantial harm due to Defendant Dowis's delay. On March 24, 2011, when he submitted the Request for Interview to Defendant

20

Dowis, Plaintiff's toe was only swollen, painful, bruised, and malodorous; on March 26, 2011, his toe ruptured, he was rushed to the hospital, and his leg was amputated below the knee.[4]

Altogether, the court finds that Plaintiff's Complaint sufficiently alleges a claim for deliberate indifference against Defendant Dowis.  The court considers, *infra,* whether this right was clearly established for purposes of qualified immunity.

### b.    The Officer Defendants

Plaintiff alleges that the Officer Defendants violated his Eighth Amendment rights because, when he asked them to send him to medical after he cut his left toe, they told him to put in a kite.  Plaintiff also alleges that Defendant Giles was deliberately indifferent to Plaintiff's serious medical needs because he refused to send Plaintiff to SCF medical after Plaintiff was called to his office due to the stench emanating from his foot.

The former allegations as to all of the Officer Defendants fail to state a claim for relief.  First, the mere fact that the Officer Defendants allegedly told Plaintiff to submit a kite to obtain treatment for his foot does not establish that the Officer Defendants somehow delayed or denied medical treatment for Plaintiff.  *Oxendine,* 241 F.3d at 1279.  Instead, the Officer Defendants simply informed Plaintiff of the appropriate method for obtaining medical care.  Even if the Officer Defendants were incorrect to believe that Plaintiff needed to submit a kite to obtain medical care, Plaintiff's allegations do not demonstrate that this mistake was more than negligent.

---

[4] To be sure, Plaintiff may ultimately face an issue of causation if it proves that medical intervention on March 24, 2011 would not have saved Plaintiff's leg. *Sparks v. Rittenhouse,* 164 F. App'x 712, 718 (10th Cir. 2006) (citing *Daniels v. Gilbreath,* 668 F.2d 477, 488-89 (10th Cir. 1982)) (Causation is a necessary element of a § 1983 claim of deliberate indifference).  However, that question is best suited for expert testimony and clearly is not properly resolved on the pleadings in this case.

*Berry v. City of Muskogee,* 900 F.2d 1489, 1495 (10th Cir. 1990) (deliberate indifference requires a higher degree of fault than negligence or even gross negligence).

However, the court finds that the latter allegations against Defendant Giles are sufficient to state a claim for deliberate indifference.  The Officer Defendants argue that Plaintiff's allegations are insufficient because he has failed to allege facts demonstrating that Defendant Giles knew of a substantial risk to his health.  However, prior to meeting with Defendant Giles, the stench from Plaintiff's gangrenous foot had caused both prisoners and guards to gag and complain.  In addition, at the time he met with Defendant Giles, the cut on his toe had started splitting and opening up.  Because Plaintiff was called into Defendant Giles' office for the specific purpose of addressing the malodor emanating from his foot, it is reasonable to infer that Plaintiff informed Defendant Giles of these incidents and symptoms.  These circumstances raise a plausible inference that Defendant Giles knew of a substantial risk to Plaintiff's health.

Furthermore, particularly in light of his prior kites for medical attention, it is reasonable to infer that Plaintiff requested that Defendant Giles send him to medical.  Nevertheless, Defendant Giles refused to send Plaintiff to medical and instead told Plaintiff to go shower.  These allegations are sufficient to raise a plausible inference that Defendant Giles disregarded the risk of serious harm to Plaintiff.  Accordingly, the court finds that Plaintiff has plausibly alleged that Defendant Giles acted with deliberate indifference to his serious medical needs.

### 4.    *Qualified Immunity*

Because Plaintiff's allegations fail to plausibly demonstrate that the Defendants Oliverius, Hill, and Limbries violated his Eighth Amendment rights, these Defendants are entitled to

qualified immunity from Plaintiff's § 1983 claim.  However, because Plaintiff has stated a

plausible Eighth Amendment claim against Defendants Dowis and Giles, the court must next

consider whether the right he alleges was violated was clearly established at the time.  *Herrera v.*

*City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009).

The court finds that it was well settled at the time of Defendant Dowis' and Defendant

Giles' actions that they could not deliberately delay or deny Plaintiff treatment for his gangrenous

toe.  *See Oxendine,* 241 F.3d 1272.  Indeed, by 1997, it was clearly established that prison officials

run afoul of the Eighth Amendment's prohibition of cruel and unusual punishment when they

exhibit "deliberate indifference" to an inmate's "serious medical needs."  *Estelle,* 429 U.S. at 104.

*See also Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) ("A prison official violates an

inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an

inmate's serious medical needs—if he knows of and disregards an excessive risk to inmate health

or safety.")  Accordingly, presuming the truth of Plaintiff's allegations and construing them in a

light most favorable to him, the court cannot find at this juncture that Defendants Dowis and Giles

are entitled to qualified immunity.

**B.**     ***State Law Claim***

Defendants allege that Plaintiff's state law claim must be dismissed because there is not a

claim under Colorado state law for "willful and wanton" conduct.  Plaintiff suggests that this claim

was intended as a state law claim for negligence, and thereby appears to concede that a claim for

willful and wanton conduct is not cognizable.

A party may be required to establish that a government official's conduct was willful and wanton to overcome the operation of the Colorado Government Immunity Act (CGIA), Colo. Rev. Stat. § 24-10-110(5)(a), (b), or in order to assert a claim for exemplary damages, Colo. Rev. Stat. § 13-21-102(1)(a).  "However, such facts do give rise to a freestanding claim in tort for 'willful and wanton conduct' under Colorado law." *Fredericks v. Koehn,* 06-cv-00957-MSK-KLM, 2007 WL 2890466, at *12 (D. Colo. Sept. 28, 2007).  Indeed, Plaintiff has not identified any authority recognizing a standalone claim for willful and wanton conduct.

Instead, Plaintiff alleges only that a claim for willful and wanton *negligence* is cognizable. While the court agrees that a negligence claim asserting that Defendants' conduct rose to the level of being willful and wanton could be asserted, Plaintiff's "willful and wanton conduct" claim does not explicitly assert that Defendants acted negligently.  *See Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007) (to satisfy Fed. R. Civ. P. 8 and state a claim in federal court, a complaint must explain, *inter alia,* what *specific legal right* the plaintiff believes the defendant violated).  And because Plaintiff is represented by counsel, the court cannot liberally construe Plaintiff's Complaint to assert a negligence claim.

Accordingly, Plaintiff's second claim for relief is properly dismissed.  However, the court recommends that the dismissal of this claim be without prejudice to Plaintiff seeking leave to amend his Complaint to assert a claim that is cognizable under state law.[5],[6]

---

[5] Defendants argue that Plaintiff's state law claim may nevertheless be barred by either the CGIA or the applicable statute of limitations. However, they also concede that these arguments may differ depending on the specific tort claim that is asserted.  As such, the court declines to address these arguments unless or until Plaintiff asserts a cognizable state law claim.

[6] The Officer Defendants also argue that they are entitled to attorneys' fees pursuant to Colo. Rev.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that "Defendant Stock's Motion to Dismiss, or Alternatively, for Summary Judgment" (Doc. No. 13) be GRANTED and that Defendant Stock be dismissed as a defendant.  I further

RECOMMEND that "Defendant Dowis' Motion to Dismiss" (Doc. No. 19) be GRANTED in part and DENIED in part as follows:  Defendant Dowis' Motion should be granted to the extent that it seeks to dismiss Plaintiff's state law claim and Plaintiff's § 1983 claim, but only insofar as that claim is ground on the theory of supervisory liability.  Defendant Dowis' Motion should be denied to the extent that it seeks to dismiss Plaintiff's § 1983 claim insofar as that claim alleges she was deliberately indifferent in failing to respond to his Request for Interview.  I further

RECOMMEND that "Defendants Giles, Oliverius, Hill, and Limbreis' Motion to Dismiss" be GRANTED to the extent that it seeks to dismiss Plaintiff's state law claim and § 1983 claim against Defendants Oliverius, Hill, and Limbreis and DENIED to the extent that it seeks to dismiss Plaintiff's § 1983 claim against Defendant Giles.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that

Stat. § 13-17-201.  However, because the court recommends that Plaintiff's state law claim be dismissed without prejudice to Plaintiff seeking leave to amend his complaint to assert a proper tort claim, the court declines to recommend an award of attorney's fees at this juncture.

does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but*

*see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not

apply when the interests of justice require review).

Dated this 10th day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge